IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-544-FL

| | |
|---|---|
| ROSHANDA VAUGHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| TRANSDEV SERVICES, INC.; | ) |
| CHARLES KOONCE; and the CITY OF | ) |
| RALEIGH, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on motion to dismiss by defendant City of Raleigh (the "City") pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (DE 25). Plaintiff responded in opposition, and the City replied. In this posture, the issues raised are ripe for ruling. For the following reasons, the City's motion is granted.

**BACKGROUND**

Plaintiff commenced this action in the Superior Court of Wake County, asserting claims based upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and claims under state law, including, as pertinent herein, a claim of negligent hiring and management against the City. Plaintiff seeks compensatory damages, punitive damages, and costs, against defendants, including the City.

The City removed the action to this court on October 15, 2015, and filed the instant motion to dismiss on November 25, 2015. Defendants Transdev Services, Inc. ("Transdev") and Charles Koonce ("Koonce") filed answers, and the court entered a case management order governing

discovery as to those defendants on February 29, 2016. Discovery as to the City is stayed pending ruling by the court on the instant motion to dismiss.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff is an individual and a resident of Wake County, North Carolina. Defendant Transdev is a Delaware corporation registered with the North Carolina Secretary of State and authorized to conduct business in North Carolina. Transdev conducts business in Wake County at least in so far as operating the "Raleigh Bus System" ("GoRaleigh") under the management of the Raleigh Transit Authority for the City. (Compl. ¶9). Through the Raleigh Transit Authority, the City contracted with Transdev to operate the GoRaleigh bus system.

Plaintiff began working for Transdev on or about March 3, 2014, beginning with a "probationary period" lasting for 120 days from her start date. (Id. ¶28). Plaintiff was certified and instructed to start on duty as a bus driver on April 22, 2014, and she completed her probationary period with Transdev on or about July 3, 2014.

Defendant Koonce was an employee of Transdev at all pertinent times, and held the title of Safety Supervisor, responsible for providing safety training, safety investigations, and reporting on unsafe actions taken by employees of Transdev. Koonce had management responsibility as to training, evaluations, performance, and oversight of employees of Transdev, including plaintiff. Transdev or its predecessor has received multiple complaints from female employees as to inappropriate and harassing behavior of Koonce during his employment with Transdev, beginning as early as 2010.

2

Between April 2014 and July 2014, Koonce made numerous inappropriate and harassing comments to plaintiff based on plaintiff's sex, as well as unwelcome sexual advances. Plaintiff expressed her discomfort with such comments and advances, and she reported "Koonce's behavior to Terrence Dewberry, local Union President," in July 2014. (Id. ¶46). Koonce thereafter continued his harassing comments and behavior. In October 2014, while discussing with plaintiff an "incident on the bus," Koonce made physical contact with plaintiff, and plaintiff informed Koonce that such contact was not welcome. (Id. ¶50).

In November 2014, plaintiff met with an operations director and a human resources assistant at Transdev, and plaintiff complained about Koonce's behavior. In December 2014, plaintiff met with a regional human resources director at Transdev, who communicated that there were "ongoing issues" with Koonce and "multiple attempts had been made to correct such behavior." (Id. ¶54). Around that time, human resources manager at Transdev suggested to plaintiff that "complaining against Koonce could impact [plaintiff's] employment with Transdev." (Id. ¶55).

After plaintiff reported Koonce's behavior to Transdev, Koonce continued to make advances of a sexual nature towards plaintiff, and she repeatedly indicated that the advances were not welcome. Because of Koonce's behavior, plaintiff felt that her job was in danger or contingent on her relationship with Koonce, and plaintiff was concerned for her safety. After plaintiff reported Koonce's behavior to Transdev, plaintiff was not allowed to become a certified trainer with Transdev, her vacation request was not approved as per Transdev's normal practice, and she was not offered appropriate training and counseling following the death of a bus passenger.

3

Case 5:15-cv-00544-FL   Document 47   Filed 03/31/16   Page 3 of 12

**DISCUSSION**

A.  Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Under the former assertion, as here, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id.

"When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993). "Yet when, as here, the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." Id.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

4

Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B. Analysis

In its motion to dismiss, the City argues (1) that plaintiff fails to state a claim against it, (2) that sovereign immunity otherwise bars the claim against the City, and (3) that plaintiff may not secure punitive damages against the City. The court addresses first the threshold issue of sovereign immunity, and secondly whether the complaint states a claim against the City.[1]

1. Immunity

"Under the doctrine of governmental immunity, a county or municipal corporation is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." Estate of Williams ex rel. Overton v. Pasquotank Cty. Parks & Recreation Dep't, 366 N.C. 195, 198 (2012) (internal quotations omitted). Under North Carolina law, "governmental immunity provides a 'complete defense' that 'shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages.'" Davis v. City of Greensboro,

---

[1] Plaintiff concedes that she is not entitled to seek punitive damages against the City, and she has consented to dismissal of that particular prayer for relief. Accordingly, the City's motion to dismiss the request for punitive damages is granted.

N.C., 770 F.3d 278, 281 (4th Cir. 2014) (quoting Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ., 678 S.E.2d 351, 354 (2009)). "As such, governmental immunity in North Carolina constitutes 'an immunity from suit rather than a mere defense to liability.'" Id. (quoting Craig, 678 S.E.2d at 354). Accordingly, at the motion to dismiss stage of a case, when considering an asserted defense of governmental immunity, the court must reach "a legal conclusion" whether a plaintiff has "adequately pled" facts to overcome the immunity defense. Id.[2]

The City's assertion of the defense of sovereign immunity and plaintiff's response thereto raise the issue whether plaintiff has alleged that the alleged conduct of the City constituted a "proprietary" or "governmental" function. "Immunity applies to acts committed pursuant to governmental functions but not proprietary functions." Bynum v. Wilson Cty., 367 N.C. 355, 358 (2014). Whether a plaintiff has alleged a proprietary function turns on a multi-step inquiry. "[T]he threshold inquiry in determining whether a function is proprietary or governmental is whether, and to what degree, the legislature has addressed the issue." Estate of Williams, 366 N.C. at 200.

Here, plaintiff asserts a claim against the City on the basis of its management and oversight of a contract for provision of public transportation services. (Compl. ¶¶ 117-134). The legislature has addressed the nature of this function where it provides by statute that "[t]he establishment and operation of a transportation authority as herein authorized are governmental functions and constitute a public purpose, and the municipality is hereby authorized to appropriate funds to support

---

[2] North Carolina courts "have differed as to whether sovereign immunity is a matter of personal or subject matter jurisdiction." Teachy v. Coble Dairies, Inc., 306 N.C. 324, 327 (1982). "[T]he federal courts have tended to minimize the importance of the designation of a sovereign immunity defense as either a Rule 12(b)(1) motion regarding subject matter jurisdiction or a Rule 12(b)(2) motion regarding jurisdiction over the person." Id. at 327-28. Indeed, Iqbal and Davis suggest that the defense may be addressed as a matter of sufficiency of the pleading, pursuant to Rule 12(b)(6). See Iqbal, 556 U.S. at 674; Davis, 770 F.3d at 282. Accordingly, the court simply considers the dismissal here as one grounded in sovereign immunity.

6

the establishment and operation of the transit authority." N.C. Gen. Stat. § 160A-583. Thus, the City's operation of the GoRaleigh bus system is designated by statute to be a governmental function.

Analysis of the issue does not end with the statute, however. "[E]ven if the operation of a [municipal] program is a governmental function by statute, the question remains whether the specific operation of [the program], in this case and under these circumstances, is a governmental function. . . in light of other factors pleaded in the complaint." Estate of Williams, 366 N.C. at 201 (quotations omitted). Other factors include but are not limited to "whether the service is traditionally a service provided by a governmental entity, whether a substantial fee is charged for the service provided, and whether that fee does more than simply cover the operating costs of the service provider." Id. at 202-203.

In this case, plaintiff includes few allegations regarding the functioning of the GoRaleigh bus system to alter the analysis beyond the threshold inquiry into the statutory designation of a governmental function. Plaintiff does not allege facts permitting an inference that operation of the GoRaleigh bus system in the context of this case, as opposed to generally as designated by the legislature, is a proprietary function. According to the complaint, Transdev operates the GoRaleigh bus system on behalf of the City, and the City has ultimate management responsibility for that operation of the GoRaleigh bus system. (Compl. ¶¶ 9, 13). Plaintiff, however, makes no allegation in the complaint regarding other factors sufficient to permit an inference that the City's management and oversight function is proprietary in nature.

Accordingly, plaintiff's claim against the city must be dismissed as a matter of law pursuant to the doctrine of sovereign immunity.

7

2. Failure to State a Claim

Plaintiff asserts a claim of "negligent hiring and management" against the City. "North Carolina recognizes a claim for negligent employment or retention when the plaintiff proves" the following elements:

> (1) the specific negligent act on which the action is founded . . . (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision, . . . ; and (4) that the injury complained of resulted from the incompetency proved.

Medlin v. Bass, 327 N.C. 587, 590-91 (1990) (quoting Walters v. Lumber Co., 163 N.C. 536, 541 (1913)).

Generally, a "plaintiff must show [an] employer's hiring or retention after actual or constructive knowledge of [an] employee's incompetence." Id. (emphasis added) (citing Pleasants v. Barnes, 221 N.C. 173 (1942)). As such, "North Carolina law . . . does not currently recognize claims of an injured employee of an incompetent or unqualified independent contractor against a party for its negligent selection or retention of the independent contractor." Dunleavy v. Yates Const. Co., 106 N.C. App. 146, 153 (1992). On this basis, where plaintiff does not allege that she is an employee of the City, her claim against the City fails as a matter of law. See id.

Recognizing the holding in Dunleavy, plaintiff suggests that she may be, in fact, an employee of the City, in which case she may maintain her claim against the City. She asserts that "there is some confusion as to whether, in fact, Plaintiff is an employee of TransDev or the City." (Pl's Resp. to M. to Dismiss, DE 31, at 6). The complaint, however, belies this assertion. Plaintiff states repeatedly in the complaint that Transdev employed both plaintiff and Koonce. (Compl. ¶¶ 10, 12, 13, 49, 55, 56).

Additional facts and circumstances alleged in the complaint lend support to the proposition that plaintiff was employed only by Transdev. Plaintiff began work for Transdev in March 2014, was placed in a probationary period by Transdev until July 2014, was trained by Transdev during that time, and she was supervised by Koonce, who was also an employee of Transdev who had power to fire Transdev employees. (Id. ¶¶ 27-37). Employees of Transdev submitted complaints to Transdev, (Id. ¶¶ 38, 49), and plaintiff met with numerous Transdev human resources personnel to discuss her complaints. (Id. ¶¶ 52-55). Employment benefits were to be provided by Transdev. (Id. ¶¶62-64).

Plaintiff nonetheless asserts in her response to the motion to dismiss that she may be considered a "quasi-employee" of the City. (Plaintiff's Resp. to M. to Dismiss, DE 31, at 2). Plaintiff asserts that "Plaintiff's union representative" has explained to her that "if TransDev's contract were to be terminated, Plaintiff and the other workers and union members would not lose their jobs – that they [are] actually 'employed by the city.'" (Id.). As an initial matter, facts asserted in a response brief are not sufficient to defeat a motion to dismiss. See Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 542-43 (E.D.N.C. 2008).

In any event, the facts asserted in plaintiff's brief, considered together with the facts in the complaint, do not permit a plausible inference that plaintiff is an employee of the City and Transdev in a dual capacity. In order to determine whether an individual is jointly employed by two entities, the court must consider the following factors, with no single factor being dispositive:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;
> (3) whether the putative employer furnishes the equipment used and the place of work;
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;

(5) the length of time during which the individual has worked for the putative employer;
(6) whether the putative employer provides the individual with formal or informal training;
(7) whether the individual's duties are akin to a regular employee's duties;
(8) whether the individual is assigned solely to the putative employer; and
(9) whether the individual and putative employer intended to enter into an employment relationship.

Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 414 (4th Cir. 2015). Here, plaintiff has alleged no facts that the City had the authority to hire and fire plaintiff; carried out day-to-day supervision; possessed responsibility over employment records; or provided plaintiff with training. To the contrary, the complaint alleges that Transdev maintained such authority and responsibilities. While an inference may be drawn that plaintiff used equipment of the City, this factor alone is not enough to transform her into an employee of the City, in light of the remaining factors. In this context, the asserted statement by a union representative that plaintiff was employed by the City amounts to conjecture and speculation about the legal relationship between the parties, where it is itself premised upon a hypothetical circumstance that has not yet come to pass.

In sum, where plaintiff is not an employee of the City, her claim of negligent hiring and supervision against the City must fail.

Plaintiff's negligent hiring and supervision claim against the City fails for an additional reason. In particular, plaintiff has not alleged facts permitting a plausible inference that the City knew or should have known of the allegedly tortious conduct of Koonce. Rather, plaintiff alleges that Transdev knew of past conduct of Koonce, and that other Transdev employees had complained to Transdev about Koonce. (Compl. ¶¶ 38, 49, 52, 56). Plaintiff suggests that the City should have been aware of Koonce's alleged unlawful behavior by virtue of its contractual relationship with Transdev. (Pl's Resp. to M. to Dismiss, DE 31, at 8). Plaintiff, however, alleges no facts regarding

10

the contract between Transdev and the City that would have placed on the City the duty to discovery complaints of sexual harassment by Koonce. Rather, given the detailed allegations regarding the management and human resources structure at Transdev, (id., 38, 49-56), the complaint suggests that such responsibility to manage its employees lay solely with Transdev.

In support of her claim against the City, plaintiff argues apparently in the alternative that the City should be held liable for failing to provide sufficient management or oversight of the "negligence" and "bad management" of Transdev. (Pl's Resp. to M. to Dismiss, DE 31, at 8-9; see Compl. ¶¶ 121, 126-131, 134). Plaintiff suggests that Transdev did such a bad job in managing complaints regarding Koonce that the City must be held responsible for Transdev's incompetence. As stated above, however, the tort of negligent hiring and supervision, however, does not permit an employee of an independent contractor to obtain relief from a party "for its negligent selection or retention of the independent contractor." Dunleavy, 106 N.C. App. at 153.

Moreover, to hold the City liable under such a theory of negligent oversight or supervision over Transdev, plaintiff must allege underlying tortious acts committed by Transdev. See Medlin, 327 NC at 591; Johnston v. Leith, Inc., No. 5:10-CV-547-FL, 2011 WL 1770434, at *6 (E.D.N.C. May 9, 2011). A company's alleged Title VII violations or generalized bad management practices, however, do not constitute such tortious acts. See McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003); Johnston, 2011 WL 1770434 at *6.

Plaintiff argues that she has sufficiently alleged a tortious act because Koonce's conduct involved assaultive comments and unwanted touching. However, plaintiff's claim for negligent hiring and supervision against Transdev for tortious conduct of Koonce is not presently before the court. Rather, plaintiff seeks to proceed against the City on a much more attenuated alternative

11

theory of liability, reliant on conduct by Transdev. (Pl's Resp. to M. to Dismiss, DE 31, at 8-9; Compl. ¶¶ 121, 126-131, 134). Under such alternative theory, where plaintiff fails to allege tortious conduct by Transdev, her negligent hiring and supervision claim against the City fails as a matter of law. See McLean, 332 F.3d at 719; Johnston, 2011 WL 1770434 at *6

Accordingly, plaintiff's claim against the City must be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Based on the foregoing, the City of Raleigh's motion to dismiss is GRANTED. Plaintiff's claim against the City is DISMISSED WITHOUT PREJUDICE on the basis of sovereign immunity and for failure to state a claim upon which relief can be granted.

SO ORDERED, this the 30th day of March, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge